**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Thomas Valentine | § | |
| | § | |
| *Plaintiff*, | § | Case: 1:24–cv–01081 |
| | § | Assigned To : Unassigned |
| *v.* | § | Assign. Date : 4/11/2024 |
| | § | Description: Pro Se Gen. Civ. (F-DECK) |
| | § | |
| George Washington University | § | |
| 1918 F Street NW | § | COMPLAINT |
| Washington, DC 20052 | § | |
| | § | |
| George Washington Medical Faculty Associates | § | |
| 2150 Pennsylvania Avenue NW | § | |
| Washington, DC 20037 | § | |
| | § | |
| Universal Health Services | § | |
| 367 South Gulph Road | | |
| King of Prussia, PA 19406 | | |
| | | |
| *Defendants*. | | |



**RECEIVED**

APR  11 2024

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

## REDACTED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Plaintiff Thomas Valentine files this Complaint against Defendants Universal Health Services, George Washington University, and George Washington Medical Faculty Associates, hereafter referred to as "George Washington University Hospital" or "GWUH", and alleges as follows:

## NATURE OF ACTION

1. Plaintiff brings this action pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.* ("DCHRA"), for redress of acts of discrimination against him by GWUH employees and contractors and GWUH's failure to make reasonable accommodations for his disability.

## JURISDICTION AND VENUE

2. The Court has original subject matter jurisdiction over violations of the ADA.

3. The Court has supplemental jurisdiction over violations of the DCHRA pursuant to 28 U.S.C. § 1367.

4. The Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423 because the Defendants are incorporated in the District of Columbia, Plaintiff's claims for relief arise from the Defendants' transaction of business in the District of Columbia, and Plaintiff's claims for relief arise from Defendants' commission of a wrongful act in the District of Columbia.

5. The Court has diversity jurisdiction because Plaintiff believes the amount of damages in controversy exceed $75,000 and there is complete diversity of citizenship between the

Plaintiff – who is domiciled in the state of Ohio and the Defendants, which are located in the District of Columbia and Pennsylvania.

6. This Court is the proper venue for this action because the Defendants are located and operate in the District of Columbia, and a substantial part of the events giving rise to the claims took place in the District of Columbia.

## PARTIES

7. Plaintiff is a person with a disability[1] which meets the definition of a disability under the ADA, 42 U.S.C. § 12102, and the DCHRA, D.C. Code 2-1401.02(5A).

8. Defendant George Washington University is a non-profit corporation located in the District of Columbia and is the minority owner of George Washington University Hospital.

9. Defendant George Washington Medical Faculty Associates is a company located in the District of Columbia and staffs George Washington University Hospital.

10. Defendant Universal Health Services is a company located in the Commonwealth of Pennsylvania and is the majority owner of George Washington University Hospital.

11. Defendants operate George Washington University Hospital as a place of public accommodation within the meaning of the ADA, 42 U.S.C. § 12181(7)(B) and the DCHRA, D.C. Code § 2-1401.02(24).

## FACTUAL BACKGROUND

12. On April 11, 2023, Plaintiff arrived at GWUH to ███████████████████████ ████████████████████████████████████████████.

---

[1] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████.

13. ██████████████████████████████████████████████████████████████

████████████████████████████ .

14. ████████████████████ Plaintiff presented the check-in nurse and the hospital security a

doctor's note signed by his licensed physician stating that Plaintiff has a disability which

prevents him from safely wearing a face mask.

15. Plaintiff was permitted to sit in the waiting room without a mask. ██████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████

16. ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████ .

17. ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

18. ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ .

19. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

20. Later that same day, around 2:00 PM, Plaintiff returned to GWUH ████████████

██████████████████████████████████████████. Plaintiff checked in with

the security desk, showed his doctor's note to the security guards, and was allowed into

the hospital ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

21. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████

22. ████████████████████████████████████████████████████████████

████████████████████████████████████████████. While in the gift shop, Plaintiff was

told by the gift shop employees to put on a mask. Plaintiff responded that he had a

doctor's note. The gift shop employees told him that they were not affiliated with the

hospital and that he needed to put on a mask.

23. The gift shop employees asked a GWUH concierge employee, wearing a blazer, hereafter

referred to as "Concierge Employee," to confront Plaintiff.

24. Plaintiff showed his doctor's note to Concierge Employee, who became incensed and

said, "What the hell kind of medical condition would stop you from wearing a mask?"

When Plaintiff declined to disclose and stated that his rights were protected by the ADA,

Concierge Employee verbally abused Plaintiff, saying things like, "This is why we're in

the situation we're in in this country, people talking about 'my rights'" and other critical

statements. After a few minutes, Concierge Employee left Plaintiff with unclear

intentions. █████████████████████████████████████████████████████

████████████████████████████████████████████

25. Plaintiff arrived at the ER security desk to be allowed in and was asked by the security

guards to check in with the nurse at the front desk of the ER.

26. Plaintiff told the check-in nurse that ███████████████. The check-in nurse tried to

hand him a mask, so Plaintiff showed her his doctor's note.

27. The check-in nurse hesitated after reading the note, but directed the security guards to

give Plaintiff a wristband ███████████████████████████████.

28. █████████████████████████████████████████████████████

██████████████████████████████████.

29. ████████████████████████████████, a male nurse (hereafter referred to as

"Male Nurse A") came ███████████ and told Plaintiff to put on a mask. Plaintiff

handed Male Nurse A his doctor's note.

30. Male Nurse A looked at the note but after a minute began aggressively and loudly

ordering Plaintiff to follow him.

31. Plaintiff ███████████████ did not want to cause a scene and assumed Male

Nurse A was going to bring him somewhere to speak with some staff member about the

note, so he began following Male Nurse A, unsure where they were going.

32. As Plaintiff was walking away with Male Nurse A, ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

33. Male Nurse A led Plaintiff back out to the waiting room at the security desk and then left.

34. ████████████████████████████████████████████████████

████████ he realized that he was alone and there was no staff member there to talk with

him.

35. Plaintiff went back to the security desk to be let back inside. The check-in nurse

intervened and stated that Plaintiff could not be allowed back in without a mask.

36. The security guards were incredulous. One of them said, "Weren't you here all night

without a mask?" The security guards gave Plaintiff the number of the ER manager and

advised him to call her.

37. Plaintiff called the ER manager's phone repeatedly. It rang endlessly and nobody

answered after several minutes.

38. Knowing time was of the essence ████████████████████████████

████████, Plaintiff looked up the number of the GW general counsel's office and spoke

with a receptionist there. After Plaintiff briefly explained the situation and his urgent

need to be let back in to the ER, the receptionist stated, "That doesn't seem right," and

advised Plaintiff to call a different number and if he did not get a resolution, to call back.

39. The number the general counsel's office gave did not ring to a live person. After several

attempts to get through, Plaintiff went to the hospital lobby to see if there was an

executive office where he could find someone to speak with.

40. At this time, Concierge Employee A re-appeared and stopped Plaintiff. Plaintiff
    explained that he needed to reach someone in charge who could help with the situation.
    Concierge Employee A had calmed down and told Plaintiff that he had to keep the gift
    shop employees happy. Plaintiff told Concierge Employee A that the gift shop was the
    least of his concerns; ███████████████████████████████████████████
    ██████. Concierge Employee A gave Plaintiff the number of the Patient Experience office
    and advised him to try there. Plaintiff called but was not able to get through to a live
    person.

41. Plaintiff decided to call the GWUH switchboard and ask for Kimberly Russo, the CEO of
    GWUH. Plaintiff spoke with a receptionist in Russo's office. He again explained the
    situation and his urgent need ███████████████████████████. Russo's
    receptionist asked follow-up questions and then instructed Plaintiff to wait on hold while
    she checked if she could "pull [Russo] out of her meeting". After several minutes on
    hold, the receptionist returned and told Plaintiff that somebody was coming down to see
    him.

42. After several more minutes, three GWUH employees came to the lobby and began
    speaking with Plaintiff. One, whose name Plaintiff cannot recall, introduced herself as the
    "ED Manager" and will hereafter be referred to as such. The second introduced herself as
    Stephanie and stated she was "with patient experience." A third identified herself as
    Becky. A male uniformed security guard, hereafter referred to as "Security Guard,"
    accompanied them.

43. During a ten-minute conversation, Plaintiff repeatedly asserted his rights under the ADA
    to be reasonably accommodated ███████████. The four employees stated over and over

that their policy was that all visitors had to wear a mask, no exceptions. Security Guard told Plaintiff that visiting is a "privilege." Plaintiff explained to him that if a privilege is afforded to all visitors, then visitors with disabilities must be given reasonable accommodations to achieve the same privileges offered to regular visitors. Plaintiff repeatedly told them that what they were doing was illegal and wrong.

44. Plaintiff repeatedly offered to take a COVID test as a reasonable accommodation. This proposal was dismissed out of hand without any explanation.

45. The three hospital administrators refused to budge from their talking points and eventually walked away.

46. Plaintiff and Security Guard remained in the lobby. Plaintiff told Security Guard he would not leave until he was allowed ████████████ or arrested. Security Guard then got on the phone with the Metropolitan Police Department, and Plaintiff heard him apparently requesting officers.

47. Plaintiff remained in the lobby and called the CEO's office again, but the call went straight to voicemail. Suspecting they had blocked his number, a moment later Plaintiff used a virtual number to call again, which went through to the live receptionist – appearing to confirm his suspicion that they had blocked his number.

48. After a wait of some time, ED Manager returned and stated ████████████████████ ████████████ and that Plaintiff would be allowed in without a mask as long as he promised not to "wander the halls," visit the cafeteria or gift shop, or go anywhere but ████████████████████ .

49. Plaintiff agreed to these conditions, given that time was of the essence and ████████████ ████████████████████ .

50. ED Manager also stated that she would reprimand the ER employees who had allowed Plaintiff in without a mask the previous night and that their policy would continue to prohibit Plaintiff from entering the ER without a mask.

51. ED Manager asked to see Plaintiff's doctor's note again and called his doctor's office to verify the note.

52. Notably, two Metropolitan Police officers arrived just moments after ED Manager came back. The officers began speaking with Security Guard, leaving Plaintiff to believe he was seconds away from being trespassed and/or arrested for asserting his rights.

53. Plaintiff was instructed to wait in the lobby until somebody came down to escort him. Plaintiff sat for about another hour until ███████████████████████████████.

## COUNT I: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

54. Plaintiff re-alleges the statements set forth in Paragraphs 10-25 above.

55. The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

56. George Washington University Hospital is a place of public accommodation.

57. The ADA prohibits discrimination by "subjecting an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. 12182(b)(1)(A)(i).

58. The ADA prohibits – among other acts of discrimination – failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.

59. GWUH had many ways of reasonably accommodating Plaintiff, as they had done the night before. Plaintiff repeatedly offered to take as many COVID tests as the staff wanted. GWUH could have sequestered Plaintiff ████ in an isolated part of the ER. However, Defendants refused to consider these accommodations, without justification.

60. GWUH could not have labeled Plaintiff as a direct threat because they did not make an individualized assessment of him and his health.

61. ED Manager specifically stated that the policy she and the other administrators outlined – no exceptions to the visitor mask policy even with a doctor's note – would remain in place.

62. The state of public emergency in the District of Columbia had expired almost a full year before the incident. Georgetown University Hospital, a similar institution less than three miles from GWUH, ended its mask requirements for asymptomatic visitors on April 10, 2023. Plaintiff posed no threat by virtue of his inability to wear a mask.

63.  For as long as GWUH's visitor mask policy does not allow exceptions, he faces a substantial risk of actual and immediate harm.

64. Defendants' failure to modify their accessibility policies, procedures, or to otherwise reasonably accommodate Plaintiff was based on Plaintiff's inability to wear a mask due to his disability. Therefore, Defendants' aforementioned refusal and failure to make reasonable accommodations was based on Plaintiff's disability and violated the ADA.

65. Defendants' failure to comply with the ADA has resulted in harm to Plaintiff and potentially other individuals with disabilities unless and until Defendants are ordered by this Court to make modifications to their policies, practices, and procedures, pursuant to the ADA.

66. Defendant experienced severe emotional distress as a result of the incident.

## COUNT II: VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

67. Plaintiff re-alleges the statements set forth in Paragraphs 10-25 above.

68. The DCHRA provides that it "shall be an unlawful discriminatory practice to…wholly or partially for a discriminatory reason based on the actual or perceived…disability…of any individual…to deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2-1402.31.

69. The DCHRA provides that "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate." D.C. Code § 2-1403.16.

70. Plaintiff is a person with a disability within the meaning of the DCHRA. Plaintiff is an aggrieved person within the meaning of the DCHRA. GWUH is a place of public accommodation within the meaning of the DCHRA.

71. Defendants denied Plaintiff the full and equal enjoyment of GWUH's goods, services, facilities, privileges, advantages, and accommodations.

72. Plaintiff experienced severe emotional distress as a result of GWUH's treatment of him.

73. Defendants' denial of full and equal enjoyment of GWUH's goods, services, facilities, privileges, advantages, and accommodations was based on Plaintiff's inability to wear a mask because of his disability and therefore constituted an unlawful act of discrimination based on his disability in violation of the DCHRA.

74. For its violations of the DCHRA, and in accordance with the DCHRA, Defendants are liable to Plaintiff for compensatory damages, punitive damages, and reasonable attorney's fees, expenses, and costs, in amounts to be determined at trial, and all other available relief.

## PRAYER FOR RELIEF

75. WHEREFORE, Plaintiff respectfully prays that this Court:

    a.    Declare the acts and omissions of Defendants complained of herein to be in violation of the Americans with Disabilities Act;

    b.    Declare the acts and omissions of Defendants complained of herein to be in violation of the D.C. Human Rights Act;

    c.    Enter a preliminary and permanent injunction requiring Defendants to modify their policies, practices, and procedures, including those with regard to face masks, to comply with the ADA and the DCHRA;

    d.    Enter judgment awarding Plaintiff compensatory and punitive damages;

    e.    Award Plaintiff his costs and attorneys' fees; and

f.  Award Plaintiff such other and further relief as this Court shall deem just and

proper.

Respectfully submitted,

/s/ Thomas Valentine
*Pro Se* Plaintiff