**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| THOMAS VALENTINE,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE WASHINGTON UNIVERSITY,<br><br>GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES,<br><br>DISTRICT HOSPITAL PARTNERS,<br><br>Defendants. | Civil Action No. 1:24-cv-01081-RC |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' GEORGE WASHINGTON UNIVERSITY AND GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES' MOTION TO DISMISS**

Defendants GEORGE WASHINGTON UNIVERSITY ("the University") and GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES ("MFA") (collectively, "Defendants"), by and through undersigned counsel, hereby submit this memorandum of law in support of their motion to dismiss.

## Introduction

Plaintiff Thomas Valentine ("Plaintiff") alleges in the First Amended Complaint that he was required to wear a mask while he was visiting the George Washington University Hospital (the "Hospital"), despite having a doctor's note stating that he could not wear a mask due to a disability. Plaintiff's single allegation against the University and single allegation against the MFA in the First Amended Complaint fail to allege any plausible entitlement to relief as against them. Plaintiff must allege more than sparse, conclusory allegations. Further, Plaintiff lumping all named defendants together in his allegations, without any factual allegations to distinguish the

conduct of all defendants, runs afoul of Rule 8 and fails to put the University and the MFA on notice of his claims against them. Indeed, Plaintiff's scattershot approach to naming Defendants ignores the fact that neither the University nor MFA own or operate the Hospital, and no University or MFA employees are alleged to have somehow denied Plaintiff services.

Even assuming Plaintiff could overcome these hurdles, Plaintiff's claims under Title III of the Americans with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA") fail because Plaintiff has failed to allege that he was actually denied any benefit or service to which he was entitled. To the contrary, Plaintiff alleges that he was permitted to remain in the hospital, unmasked, as he alleges was required because of his unspecified disability.

Plaintiff's First Amended Complaint should be dismissed as against the University and MFA with prejudice, in its entirety.

## Factual Allegations[1]

Plaintiff alleges that the University "is the minority owner of George Washington University Hospital," and that MFA "staffs George Washington University Hospital." ECF No. 18-19, Am. Compl. at ¶¶8-9. Plaintiff's First Amended Complaint contains *no other allegations* regarding the University or MFA. *See* ECF No. 18-19, *passim*. In fact, Plaintiff alleges at the outset of his pleading that he is suing for "redress of acts of discrimination against him by GWUH employees and contractors and GWUH's failure to make reasonable accommodations for his disability." ECF No. 18-19, Am. Compl. at ¶ 1.

[1] For purposes of this Motion only, Defendants assume the truth of well-plead allegations in Plaintiff's First Amended Complaint, ECF Nos. 18-19. Though, Defendants, as set forth in the attached affidavits, make clear that neither the University nor MFA own or operate the Hospital.

Plaintiff alleges that co-defendant District Hospital Partners "is the majority owner of George Washington University Hospital." *Id.* at ¶10. Plaintiff also alleges that "Defendants operate George Washington University Hospital . . . ." *Id.* at ¶ 11.

Plaintiff alleges he "is a person with a disability," *id.* at ¶7, and that on April 11, 2023, he visited George Washington University Hospital (the "hospital") in order to "check a relative [] in." *Id.* at ¶12. Plaintiff provided "the check-in nurse and the hospital security" with a doctor's note allegedly stating that Plaintiff had "a disability which prevent[ed] him from safely wearing a face mask," and, as a result, he was "permitted to sit in the waiting room without a mask." *Id.* at ¶¶14-15. After Plaintiff's patient-relative was admitted to the Hospital Emergency Room, Plaintiff was permitted to stay with his relative without a mask. *Id.* The Hospital assigned a minder to help watch Plaintiff's patient-relative. *Id.* at ¶ 17. Plaintiff remained in the Hospital ER with his relative—without wearing a mask—for approximately 10 hours, from 8:00 p.m. to 6:00 a.m. the following morning. *Id.* at ¶ 18. Plaintiff left the ER around 6:00 a.m. and the Hospital nurses thanked him for his assistance. *Id.* at ¶ 19.

Plaintiff returned later in the day "around 2:00 PM." *Id.* at ¶20. He again "checked in with the security desk, showed his doctor's note to the security guards, and was allowed into the hospital." *Id.* He met with a relative in the Hospital cafeteria, without having to wear a mask. *Id.* at ¶ 20.

Sometime thereafter, Plaintiff alleges he visited the hospital gift shop and "was told by the gift shop employees to put on a mask." *Id.* at ¶22. Plaintiff alleges that he responded and said "he had a doctor's note," but that the "gift shop employees told him that they were not affiliated with the hospital and that he needed to put on a mask." *Id.* at ¶22.

Then, “the gift shop employees asked a [Hospital] concierge employee . . . to confront Plaintiff.” *Id.* at ¶23. In response, Plaintiff alleges that he “showed his doctor’s note” to the concierge employee, who allegedly “became incensed” and asked Plaintiff about the medical condition that prevented Plaintiff from wearing a mask. *Id.* at ¶24. Plaintiff allegedly “declined to disclose,” and the Hospital concierge employee allegedly “verbally abused Plaintiff” and then left. *Id.*

Plaintiff then returned to “the ER security desk . . . and was asked by security guards to check in with the nurse at the front desk of the ER.” *Id.* at ¶25. The “check-in nurse tried to hand [Plaintiff] a mask, [] Plaintiff showed her his doctor’s note,” and then the nurse “directed the security guards to give Plaintiff a wristband.” *Id.* at ¶¶26-27.

Thereafter, “a male nurse . . . told Plaintiff to put on a mask [and] Plaintiff handed [him] his doctor’s note.” *Id.* at ¶29. The male nurse then “order[ed] Plaintiff to follow him.” *Id.* at ¶30. The male nurse “led Plaintiff back out to the waiting room at the security desk and then left.” *Id.* at ¶33.

Plaintiff returned “to the security desk,” and during this entire time Plaintiff was speaking with a doctor about his relative. *Id.* at ¶ 34.

At the security desk, the “check-in nurse . . . stated that Plaintiff could not be allowed back in [the ER] without a mask.” *Id.* at ¶35. Next, Plaintiff alleges that “the security guards gave Plaintiff the number of the ER manager and advised him to call her.” *Id.* at ¶36. Plaintiff attempted to call the ER manager, but did not reach or speak with her. *Id.* at ¶37. Plaintiff then alleges that he contacted “the GW general counsel’s office and spoke with a receptionist,” who gave Plaintiff a “different number” to call. *Id.* at ¶38. Plaintiff attempted to call this number but it “did not ring to a live person,” and Plaintiff then “went to the hospital lobby to see if there

was an executive office where he could find someone to speak with." *Id.* at ¶39. Plaintiff does not allege who employed the "security guards," "check-in nurse," "male nurse," "ER manager," or "receptionist." *Id.* at ¶¶25-39.

Plaintiff alleges that he then spoke with the concierge employee again, who "gave Plaintiff the number of the Patience Experience office." Plaintiff alleges that he called, "but was not able to get through to a live person." *Id.* at ¶40. Plaintiff does not allege who employed the "concierge employee," or any other details about the "Patient Experience office." *Id.*

Plaintiff alleges that he next called the hospital "switchboard" and asked to speak with "Kimberly Russo, the CEO of [the Hospital]." Plaintiff was placed on hold by the receptionist, who then "told Plaintiff that somebody was coming down to see him." *Id.* at ¶41. Sometime later, Plaintiff alleges that "three [Hospital] employees" began speaking with him, including the "ED Manager," someone from "patient experience," and another woman. Plaintiff alleges that "a male uniformed security guard . . . accompanied them." *Id.* at ¶42. Again, Plaintiff does not allege who employed these individuals. *Id.* at ¶¶41-42.

Plaintiff alleges that he spoke with these people for 10 minutes, and that they told him "that their policy was that all visitors had to wear a mask, no exceptions." Plaintiff further alleges that in response, he "asserted his rights under the ADA to be reasonably accommodated." *Id.* at ¶43. He further alleges that he "offered to take a COVID test as a reasonable accommodation," but that this "proposal was dismissed." *Id.* at ¶44.

Plaintiff alleges that he refused to leave the hospital, and that he overheard the security guard speaking with the Metropolitan Police Department. *Id.* at ¶46.

Sometime later, the ED Manager returned and told Plaintiff that he "would be allowed in without a mask as long as he promised not to 'wander the halls,' visit the cafeteria or gift shop,

or go anywhere but [redacted].” *Id.* at ¶48. Plaintiff alleges that he “agreed to these conditions,” *id.* at ¶49, and that he “was instructed to wait in the lobby until somebody came down to escort him.” *Id.* at ¶53. The ED Manager also allegedly “asked to see Plaintiff’s doctor note again and called [Plaintiff’s] doctor’s office to verify the note.” *Id.* at ¶51.

Plaintiff alleges that *the Hospital* failed to accommodate his medical inability to wear a facemask, and that *the Hospital’s* “visitor mask policy does not allow exceptions.” *Id.* at ¶¶56, 59, 63, 73. Plaintiff further alleges that “defendants” discriminated against him in violation of the ADA and DCHRA. *Id.* at ¶¶ 64-65, 71, 73-74.

**Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to “state a claim to relief that is plausible on its face.” *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must meet the standard of plausibility. *Id.* at 557. When a complaint fails to “possess enough heft” to show that the pleader is entitled to relief, “this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.” *Id.* at 557-58. The purpose of discovery is for finding the “details” of a case—not for trying to create a case. *Id.* at 560, n.6. Indeed, “[threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice” to state claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, while *pro se* complaints “are held to less stringent standards than formal pleadings drafted by lawyers . . . a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court.” *Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 19 (D.D.C. 2008) (internal citations and quotations omitted).. *See Clariett v. Rice*, 2005 WL 3211694, at *4 (D.D.C. 2005) (“Even a pro se litigant . . . must comply with the Federal Rules of Civil Procedure.”).

## ARGUMENT

## I. Plaintiff's First Amended Complaint Fails To State A Claim.

### A. Single Allegation in "Parties" Section of Amended Complaint Does Not State a Plausible Claim for Discrimination.

Plaintiff's First Amended Complaint fails to state a claim because it fails to allege that Defendants played any role in the violations of which he complains. Plaintiff's First Amended Complaint contains *one allegation* against the University and MFA in the "Parties" section. In Paragraph 8, Plaintiff alleges:

> Defendant George Washington University is a non-profit corporation located in the District of Columbia and is the minority owner of George Washington University Hospital.

ECF No. 18-19, ¶8.

In Paragraph 9, Plaintiff alleges:

> Defendant George Washington Medical Faculty Associates is a company located in the District of Columbia and staffs George Washington University Hospital.

*Id.* at ¶9.

The University and MFA are not specifically named in any other paragraphs of the First Amended Complaint. There are no factual allegations that describe the alleged conduct of the University or MFA, or that they played a role when Plaintiff visited the hospital in April 2023. Further, the University and MFA are not named in *any* of the substantive counts of the First Amended Complaint, nor does Plaintiff allege that *any* of the individuals who purportedly violated the law were, in fact, employed by either the University or MFA, or that the University or the MFA created or enforced the allegedly discriminatory policy. Plaintiff merely asserts in a conclusory fashion that the University is a "minority owner" of the hospital and that MFA "staffs" the hospital. These bare assertions are plainly insufficient to state a plausible claim.

This is particularly so considering: (a) at the time Plaintiff visited the hospital in April 2023, the University, in fact, had no ownership interest whatsoever in the hospital nor did it have any role in managing the hospital, *see* **Exhibit A**, Declaration of B. Fernandes, and https://mediarelations.gwu.edu/universal-health-services-and-george-washington-university-restructure-gw-hospital-partnership (last visited Sept. 5, 2024); and (b) before, on, or after April 11, 2023, MFA did not employ any: gift shop employees who worked at the hospital; hospital concierge employees, who worked at the hospital; Emergency room nurses who worked at the hospital; Emergency department managers who worked at the hospital; hospital Patient Experience personnel who worked at the hospital; or hospital security guards or other hospital security personnel, *see* **Exhibit B**, Declaration of R. Wade.[2]

In *Arias v. Universal Music Grp.*, 640 F. Supp. 3d 84, 93 (D.D.C. 2022), the Court granted defendants' motion to dismiss where the defendants were named only in the "Parties" section of the complaint (which provided a general description of the business of each

---

[2] In deciding a motion to dismiss, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss," without converting a motion to dismiss to a motion for summary judgment. *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal citations and quotations omitted). The Court may also consider matters about which the Court may take judicial notice. *Id.* at 47 (considering contract attached to motion to dismiss in deciding motion, where plaintiff's complaint alleged, and entire case rested on, whether defendant had a duty pursuant to the contract). Relevant here, courts may take judicial notice of public websites at the motion to dismiss state, without converting the motion to dismiss to one for summary judgment. *See Gul v. Blinken*, No. 1:24-CV-00787 (TNM), 2024 WL 3400107, at *1 (D.D.C. July 11, 2024). Here, GW's press release, which is also mentioned in Mr. Fernandes' Declaration, is publicly available. Further, Plaintiff's claims against GW and MFA rest exclusively on Plaintiff's claim that GW "is the minority owner of George Washington University Hospital" and that MFA "staffs George Washington University Hospital." Because Plaintiff's claims necessarily rely on documents evincing whether GW owned the hospital and whether MFA staffed the hospital, the Court can consider the Declarations of Mr. Fernandes and Mr. Wade without converting the Motion to Dismiss to one for summary judgment.

defendant), and where the complaint failed to contain any reference to any of the defendants' alleged conduct with respect to the plaintiff. *See Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 109 (D.D.C. 2016) ("paucity of factual allegations" and "single, conclusory allegation" are "insufficient" to support theory of liability against defendant); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 18–19 (D.D.C. 1996) (dismissing national origin discrimination claim where there was "not a single factual allegation that, if true, would give rise to an inference of national origin discrimination"). The same result is warranted here. Indeed, the University and MFA are named only in the "Parties" section of the First Amended Complaint, and the First Amended Complaint fails to contain any reference to the University's or MFA's conduct with respect to Plaintiff.

Further, in perhaps tacit admission of Plaintiff's inability to plead a plausible claim for relief against the University and MFA, Plaintiff lumps together his allegations of wrongdoing against all "defendants." This is violative of Rule 8, and does not put the University or MFA on notice of the actual claims against them. "Generally, a plaintiff cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014) (internal citation and quotation omitted). "Instead, a plaintiff must provide each defendant with fair notice of each claim and its basis." *Id.*

Here, Plaintiff alleges each of the three defendants named in the First Amended Complaint is liable for the claims asserted in First Amended Complaint. Plaintiff, however, "fail[s] to distinguish between each entity," and instead "simply refer[s] to" all defendants

*collectively* as "Defendants." *Toumazou*, 71 F. Supp. 3d at 21. *See* Am. Compl. at ¶¶ 4-6, 11, 59, 64-65, 71, 73-75. For example, Plaintiff alleges:

- "Plaintiff claims for relief arise from Defendants' commission of a wrongful act in the District of Columbia." Am. Compl. at ¶ 4.
- "Defendants operate George Washington University Hospital . . ." Am. Compl. at ¶ 11.
- "Defendants refused to consider these accommodations . . . ." Am. Compl. at ¶ 59.
- "Defendants' failure to modify their accessibility policies, procedures, or to otherwise reasonable accommodate Plaintiff was based on Plaintiff's inability to wear a mask due to his disability. Therefore, Defendants' aforementioned refusal and failure to make reasonable accommodations was based on Plaintiff's disability and violated the ADA." Am. Compl. at ¶ 64.
- "Defendants denied Plaintiff the full and equal employment of GWUH's goods, services, facilities, privileges, advantages, and accommodations." Am. Compl. at ¶ 71.

It is impossible for the University and MFA to "determine what factual allegations pertain to" each of them, if any, and the First Amended Complaint fails to provide fair notice to them in violation of Rule 8. *Id.* (granting motion to dismiss). This compels dismissal, particularly considering the University and MFA are named in only *two* paragraphs of the First Amended Complaint. *See Arias*, 640 F. Supp. 3d at 93 ("The few factual allegations that follow in the complaint refer to Defendants as an undifferentiated group. Because these allegations refer to 'Defendants' collectively without specifying which of [the Defendants] allegedly took each action described in the complaint, they are insufficient to maintain a . . . claim against Defendants. Nor do conclusory statements applied to all Defendants substitute for individualized factual allegations.") (internal citations and quotations omitted); *Est. of Mickens v. U.S. Bank Nat'l Ass'n*, No. 18-CV-928 (KBJ), 2021 WL 3418955, at *4 (D.D.C. Aug. 5, 2021) (granting motion to dismiss where "many of Plaintiffs' factual allegations refer to "Defendants" collectively without specifying which of U.S. Bank, Ocwen, or BWW allegedly took each action described in the complaint"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826

MKB, 2015 WL 5579872, at *29 (E.D.N.Y. Sept. 22, 2015) (plaintiff's complaint failed to state a plausible claim where it referred to all three Defendants collectively, where plaintiff failed to allege facts supporting an inference that each defendant engaged in the conduct at issue, and where plaintiff failed to "set[] forth any specific facts to support [the] allegation" that defendants operated as one entity).

### B. Plaintiff Fails to State a Plausible Claim For Disability Discrimination.[3]

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). "A plaintiff alleges a violation of Title III of the ADA by asserting that he is an individual with a disability, that the defendant is subject to Title III, and that he was denied an opportunity or benefit from the defendant's services or otherwise was discriminated against because of his disability." *Datto v. Ass'n of Am. Med. Colleges*, No. 19-CV-2375 (DLF), 2020 WL 5016848, at *3 (D.D.C. Aug. 25, 2020) (internal citation omitted).

Assuming, *arguendo*, that Plaintiff is an individual with a disability as alleged in the First Amended Complaint, and that the University and MFA are subject to Title III, Plaintiff has not alleged that he "was denied an opportunity or benefit" from the University's or MFA's services, that the University or MFA otherwise discriminated against him, or that the University or MFA failed to accommodate him. To the contrary, Plaintiff alleges that he was "permitted to sit in the waiting room without a mask," Am. Compl. at ¶¶14-15; that he "was allowed into the hospital," *id.* at ¶20; that he was told he "would be allowed in without a mask as long as he promised not to 'wander the halls,' visit the cafeteria or gift shop, or go anywhere but [redacted]." *Id.* at ¶48;

[3] "[C]laims under the DCHRA ... are subject to the same standards as ADA claims, so the analysis merges." *Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1, 18 (D.D.C. 2022) (internal citation and quotations omitted).

that he "agreed to these conditions," *id.* at ¶49, and that he "was instructed to wait in the lobby." *Id.* at ¶53.

Plaintiff's First Amended Complaint must be dismissed.

* * *

In sum, Plaintiff fails to plead a plausible entitlement to relief as against the University or MFA. *Laureys v. D.C.*, No. CV 18-223 (RDM), 2019 WL 4673492, at *6 (D.D.C. Sept. 25, 2019) ("Plaintiff's complaint does not "contain sufficient factual matter, accepted as true, to 'state a [discrimination] claim ... that is plausible on its face.")). Plaintiff offers no facts that might support an inference of discrimination and, instead, alleges only that the University was a "minority owner" of the hospital (which is demonstrably false), *see* Ex. A, Declaration of B. Fernandes, that MFA "staffed" the hospital (which is also demonstrably false, as explained in the Declaration of Mr. Wade), *see* Ex. B, Declaration of R. Wade, and that Plaintiff was, in fact, permitted to remain in the hospital for his intended purpose without a face mask, as he allegedly required. His claim rests solely on his unadorned, conclusory assertion that the University and MFA were somehow responsible for inquiries from unidentified workers about wearing a facemask in a hospital. Tellingly, Plaintiff does not allege that the University or MFA created, maintained, or enforced, or were otherwise legally responsible, the allegedly discriminatory policy, because he cannot. This is insufficient to state a claim and unlock the doors of discovery. *Bereston v. UHS of Delaware, Inc.*, 180 A.3d 95, 99 (D.C. 2018) ("Bare allegations of wrongdoing that **'**are no more than conclusions are not entitled to the assumption of truth,' and are insufficient to sustain a complaint.").

## **Conclusion**

For the reasons set forth above, Defendants George Washington University and George Washington Medical Faculty Associates respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: September 9, 2024

Respectfully submitted,

GEORGE WASHINGTON UNIVERSITY
AND GEORGE WASHINGTON
MEDICAL FACULTY ASSOCIATES

*By: /s/ Raymond C. Baldwin*
Raymond C. Baldwin
rbaldwin@seyfarth.com
Samantha L. Brooks
sbrooks@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, NW
Washington, DC 20004
(202) 828-3560
Fax: (202) 641-9029
*Counsel for Defendants George Washington University and George Washington Medical Faculty Associates*

**CERTIFICATE OF SERVICE**

I HEREBY certify that a true copy of the foregoing Motion to Dismiss was filed by CM/ECF and served via first-class mail, postage prepaid, this 9th day of September, 2024, upon

Thomas Valentine
2909 Whitehaven Blvd.
Steubenville, OH 43952
*Plaintiff, Pro Se*

I HEREBY certify that a trye and correct copy of the foregoing Motion to Dismiss was filed and served by CM/ECF, this 9th day of September, 2024, upon:

Karima Tawfik Thomson
Buchanan Ingersoll & Rooney PC
700 K St. NW, Suite 300
Washington, DC 20006
Karima.tawfik@bipc.com
*Counsel for Defendant District Hospital Partners, LP*

*/s/ Raymond C. Baldwin*
Raymond C. Baldwin