**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THOMAS VALENTINE, | : | | |
| Plaintiff, | : | Civil Action No.: | 24-1081 (RC) |
| v. | : | Re Document Nos.: | 26, 29 |
| GEORGE WASHINGTON UNIVERSITY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANT DISTRICT HOSPITAL PARTNERS' MOTION TO DISMISS; GRANTING DEFENDANTS GEORGE WASHINGTON UNIVERSITY AND GEORGE WASHINGTON MEDICAL FACULTY ASSOCIATES' MOTION TO DISMISS**

## I.  INTRODUCTION

Plaintiff Thomas Valentine brings this action *pro se* against District Hospital Partners, George Washington University ("GWU"), and George Washington Medical Faculty Associates ("MFA") (collectively, "Defendants").  Valentine alleges that Defendants failed to make reasonable accommodations for his disability in violation of the Americans with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA").  District Hospital Partners moves to dismiss for lack of standing and for failure to state a claim upon which relief may be granted.  GWU and MFA jointly move to dismiss for failure to state a claim upon which relief may be granted.  For the reasons set forth below, the Court grants both motions to dismiss.

## II. BACKGROUND

### A. Factual Background

Around 8:00pm on April 11, 2023, Valentine visited George Washington University Hospital ("GWU Hospital") to check in on a relative, P.R., who was receiving treatment there for extreme psychiatric symptoms.[1] *See* Am. Compl. ¶¶ 12, 18, ECF No. 18. At the time the hospital required visitors to wear protective face masks. *Id.* ¶¶ 43, 61. Valentine suffers from a disability that he claims "prevents him from safely wearing a face mask." *Id*. ¶ 14. Upon arriving at the hospital, Valentine presented the check-in nurse and hospital security a signed doctor's note describing his condition. *Id*. The hospital staff permitted Valentine to sit in the waiting room without a mask, and shortly after they allowed him to enter P.R.'s hospital room. *Id*. ¶ 15. Valentine remained in the ER with P.R. for approximately ten hours overnight, leaving the room for short intervals when P.R. fell asleep. *Id*. ¶ 18. During these breaks, Valentine had limited unmasked interactions with the hospital staff, and when he left the hospital was "thanked . . . for his assistance in staying with P.R. and keeping P.R. under control" by hospital staff. *Id*. ¶ 19.

Valentine left the hospital in the early morning on April 12 and returned that afternoon. *See id*. ¶¶ 12, 18, 20. He "checked in with the security desk, showed his doctor's note[,]" and was granted access. *Id*. ¶ 20. Valentine briefly stopped at the hospital gift shop; gift shop employees told Valentine that he needed to wear a mask in the store. *Id*. ¶ 22. The gift shop employees then asked an unidentified concierge employee to confront Valentine. *Id*. ¶ 23. The

---

[1] Because this action is at the pleadings stage, the Court recounts the facts as alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell v. Twombly*, 550 U.S. 544, 570 (2007)).

2

concierge employee allegedly asked Valentine, "[w]hat the hell kind of medical condition would stop you from wearing a mask?" and then allegedly stated, "[t]his is why we're in the situation we're in in this country, people talking about my rights." *Id.* ¶ 24.  After, Valentine briefly returned to P.R.'s room, but a male nurse asked Valentine to exit the room and follow him.  *Id.* ¶¶ 29–30.  Eventually, Valentine attempted to return to P.R.'s room, but the nurse at the check-in desk intervened and told Valentine that he needed a mask to return.  *Id.* ¶ 35.  After being denied reentry, Valentine attempted to call various members of ER management and GWU Hospital's general counsel but was unsuccessful in reaching anyone.  *Id.* ¶¶ 37–38.

After some time passed, four GWU Hospital employees came to the lobby and began speaking with Valentine.  *Id.* ¶ 42.  Throughout a ten-minute conversation, Valentine "asserted his rights under the ADA[,]" and the GWU Hospital employees reiterated that all visitors were required to wear a mask.  *Id.* ¶ 43.  The GWU Hospital employees briefly left Valentine in the lobby, and when one of the four employees returned, she informed Valentine that the hospital had provided P.R. a private room that Valentine would be allowed in without a mask.  *Id.* ¶ 48.  Finally, a hospital employee instructed Valentine to wait in the lobby for an escort.  *Id.* ¶ 53.  Ultimately, he was able to visit with P.R. in his private room.  *Id.*  Valentine has not returned to the hospital since.  *See Id.* ¶ 63.

### B.  Procedural Background

On April 11, 2024, Valentine, proceeding *pro se*, sued GWU, MFA, and Universal Health Services, Inc. ("UHSI") for violating the ADA and the DCHRA.  Compl. at 1, ECF No. 1.  The ADA is a federal law prohibiting discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation." 42 U.S.C. § 12182(a). The DCHRA is D.C.'s state-law analogue that prohibits "deny[ing], directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" for discriminatory reasons such as actual or perceived disability. D.C. Code § 2-1402.31. Valentine claimed that the three original defendants failed to "modify their accessibility policies, procedures, or to otherwise reasonably accommodate [him] [] based on [his] inability to wear a mask due to his disability." Compl. ¶ 64. Valentine also alleged violations of the DCHRA because the three original defendants "denied [him] the full and equal enjoyment of [the hospital's] goods, services, facilities, privileges, advantages, and accommodations." *Id*. ¶¶ 71, 73. He sought a declaration that they violated the ADA and DCHRA, as well as "a preliminary and permanent injunction requiring [them] to modify their policies, practices, and procedures, including those regard[ing] face masks, to comply with the ADA and the DCHRA." *Id*. ¶ 75(a)–(c). He also sought compensatory and punitive damages, along with his costs and attorneys' fees.[2] *Id*. ¶ 75(d)–(e).

UHSI moved to dismiss the allegations against it on June 20, 2024, arguing that GWU Hospital "is operated by an indirect subsidiary of UHSI." Def.'s Mot. Dismiss ("UHSI's Mot. Dismiss") at 2, ECF No. 9-1. After further research, Valentine discovered that District Hospital Partners, a subsidiary of UHSI, is the majority owner of GWU Hospital. Pl.'s Reply Def. UHSI Mot. Dismiss ("Pl.'s USHI Opp'n") at 3, ECF No. 17. This led to Valentine filing an amended complaint on July 16, 2024, where he named GWU, MFA, and District Hospital Partners as defendants. *See* Am. Compl. None of the factual allegations or claims for relief changed.

---

[2] Valentine presumably has no attorneys' fees because he is proceeding *pro se*. *Cf. Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (noting that "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees" under a fee-shifting provision) (emphases in original).

4

District Hospital Partners now moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. Dismiss ("DHP Mot. Dismiss") at 1, ECF No. 29-1. District Hospital Partners argues that (1) Valentine's claim under the ADA must be dismissed for lack of standing and failure to state a claim; (2) Valentine's claim under the DCHRA must be dismissed because it is time-barred and he failed to state a claim; and (3) Valentine only refers to District Hospital Partners in the "parties" section of the first amended complaint, which does not state a plausible claim for discrimination. *Id*. at 5, 13, 16. GWU and MFA jointly move to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). Defs.' Mot. Dismiss ("GWU Defs.' Mot. Dismiss") at 1, ECF No. 26-1. Both GWU and MFA argue that Valentine failed to plead plausible claims against them because they do not own or operate the hospital, and no GWU or MFA employee is alleged to have denied Valentine any services. *Id*. at 2–3, 14. Valentine filed oppositions to both motions to dismiss. Pl.'s Response Defs.' George Washington University & George Washington Medical Faculty Associates' Mot. Dismiss ("Pl.'s GWU Defs.' Resp."), ECF No. 31; Pl.'s Response Opp'n Def. District Hospital Partners' Mot. Dismiss ("Pl.'s DHP Opp'n"), ECF No. 38. Defendants filed replies in support of their motions. Reply Further Supp. Mot. Dismiss, ECF No. 32; Reply Further Supp. Def. District Hospital Partners, LP's Mot. Dismiss Pl.'s First Am. Compl., ECF No. 40. The motions to dismiss are thus ripe for review.

### III.  LEGAL STANDARD

**A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The D.C. Circuit has explained that a motion to dismiss for lack of standing constitutes a

motion under Rule 12(b)(1) because "the defect of standing is a defect in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). "Because subject matter jurisdiction focuses on the Court's power to hear a claim," the Court must give a plaintiff's factual allegations closer scrutiny than would be required for a 12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

It is the plaintiff's burden to establish that he has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). For standing, the plaintiff must show that he suffered "an (1) 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'—(2) which is 'fairly traceable' to the challenged act, and (3) 'likely' to be 'redressed by a favorable decision.'" *Nat'l Treasure Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560-61). The D.C. Circuit has explained that the injury alleged must be "certainly impending." *Id*. (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

### B. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss tests the legal sufficiency of a complaint, not a plaintiff's likelihood of success on the merits. *Gill v. District of Columbia*, 872 F. Supp. 2d 30, 33 (D.D.C 2012). A plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true," allowing the court to draw a reasonable inference that the defendant is liable. *Twombly*, 550 U.S. at 555–56. "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. At the pleading stage, a plaintiff need not allege all the elements of his prima facie case. *See Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 511–12 (2002).

## IV.  ANALYSIS

At the outset, the Court notes that *pro se* complaints are held to less stringent standards than complaints drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A court can "examine other pleadings to understand the nature and basis of . . . *pro se* claims" as alleged in the complaint. *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002). Although the standard for a *pro se* complaint is less stringent, the complaint still must "(1) contain a short and plain statement of the grounds for the court's jurisdiction . . . [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *see Bair v. Obama Admin.*, No. 14-1257, 2015 WL 757576, at *1 (D.D.C Feb. 24, 2015) (granting a defendant's motion to dismiss because a *pro se* plaintiff failed to make any claim suitable for decision).

The Court starts by analyzing District Hospital Partners' motion to dismiss. The Court then turns to the GWU Defendants' motion to dismiss.

### A.  Claims Against District Hospital Partners

Valentine raises claims against District Hospital Partners under two statutory provisions—the ADA and DCHRA. District Hospital Partners moves to dismiss both claims. The Court finds that Valentine's ADA claim must be dismissed for lack of standing, and his DCHRA claim must be dismissed because Valentine failed to state a claim for which relief can be granted.

7

1.  ADA Claim

District Hospital Partners argues that Valentine cannot establish a qualifying injury-in-fact for his ADA claim because there is no concrete risk of future harm.  DHP Mot. Dismiss at 5–8.  The Court agrees.

"Article III of the Constitution limits the power of the federal judiciary to the resolution of 'Cases' and 'Controversies.'"  *Maguire v. FBI*, 236 F. Supp. 3d 147, 149 (D.D.C. 2017).  Thus, "[a] party invoking federal court jurisdiction must show they meet the 'irreducible constitutional minimum' of Article III standing."  *Nat'l Cap. Presbytery v. Mayorkas*, 567 F. Supp. 3d 230, 240 (D.D.C. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  That constitutional minimum requires that a plaintiff show an injury in fact, causation, and redressability.  *Spokeo*, 578 U.S. at 338.  And for standing, the question of "whether a case or controversy exists" is asked "at the time the litigation is commenced."  *Brookens v. Am. Fed'n of Gov't Emps.*, 315 F. Supp. 3d 561, 568 (D.D.C. 2018) (citing *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997)).  A plaintiff's alleged injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan,* 504 U.S. at 560 (internal quotation marks and citations omitted).

Valentine's ADA claim turns on the injury-in-fact requirement.  Because Valentine cannot seek monetary damages under the ADA, he is limited to declaratory or injunctive relief.  *See Am. Bus Ass'n v. Slater*, 231 F.3d 1, 5 (D.C. Cir. 2000) (holding that in a private ADA action, the available remedies do not include monetary relief).  Where a party seeks only declaratory or injunctive relief, past injuries are insufficient to establish standing.  *E.g.*, *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011).  So, Valentine must show that he is suffering an ongoing injury or faces an immediate threat of injury from District Hospital Partners' alleged

ADA violations. *See Valentine v. Wash. Nat'ls. Baseball Club, LLC*, No. 22-cv-1299, 2023 WL 346099, at *3–*4 (D.D.C. January 20, 2023) (dismissing plaintiff's ADA claims because he could not show his injury was ongoing or that he faced an immediate threat of injury).

Valentine has not done so. Valentine, who lives in Ohio, has not alleged concrete plans to visit GWU Hospital in the future. *See* Am. Compl. ¶ 63. Instead, he alleges that it is "reasonably likely" that he will have to visit GWU Hospital in the future because he has many family members in D.C. and the surrounding area. *Id*. But for Valentine to be re-exposed to District Hospital Partners' alleged ADA violations again, it would require one of his D.C.-area relatives to need medical care, for that relative to be admitted to GWU Hospital, for the hospital to have a mask mandate in effect,[3] for Valentine to visit the relative there, and for a hospital official under District Hospital Partners' authority to force Valentine to comply with the mask mandate despite his disability. These allegations fail to move Valentine's alleged injury from conjectural or hypothetical to actual or imminent. *See Lujan*, 504 U.S. at 560.

When courts evaluate the likelihood of a plaintiff returning to the place of an alleged ADA violation, they look at several factors: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff[']s past patronage; [and] (3) the definitiveness of the plaintiff's plan to return." *McKnight-Nero v. Walmart, Inc*., No. 20-cv-1541, 2021 WL 663315, at *3 (D.D.C. Feb. 19, 2021) (alteration in original) (quoting *Anderson v. Macy's Inc*., 943 F. Supp. 2d 531, 539 (W.D. Pa. 2013)). Here, none of those factors supports a likelihood of Valentine returning to the hospital. First, he is domiciled in Ohio, while the hospital is located in the District of Columbia. Am. Compl. ¶¶ 5, 10. Second, Valentine does not allege any

---

[3] As of October 30, 2024, GWU Hospital no longer required visitors to wear masks. Whether GWU may institute a mask mandate in the future is speculative. *See Valentine*, 2023 WL 346099, at *4.

9

interactions with District Hospital Partners other than the events that took place on April 11 and 12, 2023. *See* Am. Compl. Finally, Valentine has no definitive plan to return. His hypothetical plans to return depend on several scenarios that would have to align almost perfectly for him to return to GWU Hospital under similar conditions. *See id*. ¶ 63. Valentine's ability to satisfy these factors is hypothetical at best.

For the reasons stated above, Valentine has failed to meet his burden to show standing for the requested declaratory and injunctive relief for his ADA claim against District Hospital Partners. The Court will therefore dismiss that claim for lack of subject-matter jurisdiction under Rule 12(b)(1).

2. DCHRA Claim

District Hospital Partners argues that Valentine's DCHRA claim should be dismissed because it is time-barred under the DCHRA's statute of limitations, and because he fails to allege sufficient facts to state a claim. DHP Mot. Dismiss at 13, 16. The Court disagrees that the claim is time-barred but agrees that Valentine has failed to state a claim.[4]

a. Whether the Claim is Time-Barred

A statute of limitation defense may be raised by a motion to dismiss pursuant to Rule 12(b)(6). *See Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017). At the time the actions in the amended complaint took place, private causes of action under the DCHRA were required to "be filed . . . within one year of the unlawful discriminatory act." D.C. Code § 2-

---

[4] Unlike the ADA, the DCHRA provides for monetary damages, *see* D.C. Code § 2-1403.16, so the ADA standing analysis does not apply to Valentine's DCHRA claim. *See* Am. Compl. ¶ 74 (seeking monetary damages under the DCHRA); *see also Valentine*, 2023 WL 346099 at *3 n.2 (construing a similar DCHRA claim to encompass only monetary damages).

1403.16(a) (2023).[5]  For Valentine's DCHRA claim against District Hospital Partners to be timely, he would have needed to bring that claim on or before April 12, 2024.  *See* Am. Compl. ¶ 12.  But Valentine added District Hospital Partners as a defendant on July 16, 2024, past the one-year statute of limitations.  *See* Am. Compl.  For the claims against District Hospital Partners to relate back to the date of the original complaint, Valentine must satisfy the three requirements of Federal Rule of Civil Procedure 15(c).  *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Rule 15(c) provides that an amended pleading "relates back to the date of the original pleading" when  (1) the amendment asserts a claim arising from the "conduct, transaction or occurrence" in the original pleading; (2) the party to be added "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(B), (C).  So Rule 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely, even though it was filed outside an applicable statute of limitations." *Krupski*, 560 U.S. at 541.

Valentine's amended complaint satisfies the first Rule 15(c) requirement because the factual allegations have not changed, just the identity of the corporation that Valentine believed owned GWU Hospital.  *Compare* Compl. at 1 (naming UHSI as the majority owner of GWU Hospital), *with* Am. Compl. at 1 (naming District Hospital Partners as the majority owner of

---

[5] The D.C. Council has recently established a two-year statute of limitations for DCHRA claims, but that change does not apply retroactively.  *See* D.C. Code § 2-1403.16(a); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that statutes should not be given retroactive effect unless their language requires that result).

GWU Hospital). The second Rule 15(c) requirement is met for two independently sufficient reasons. First, when a newly named defendant and the original defendant share counsel at the time of service, both defendants are considered to have constructive notice of the action. *See Woods v. District of Columbia*, No. 20-0782, 2022 WL 17989326, at *4 (D.D.C. Dec. 29, 2022) (holding that Rule 15(c)'s notice requirement is met when the present and putative defendant share counsel during the time of service); *see also* 6 Mary Kay Kane & Howard Erichson, *Federal Practice & Procedure*, § 1498.1 (3d ed. 2025) (discussing how constructive and actual notice both satisfy Rule 15(c)); *Page v. Pension Ben. Guar. Corp.*, 130 F.R.D. 510, 513 (D.D.C. 1990) (describing that constructive notice requires evidence that the putative defendant should have known of the suit based on its relationship to the original defendant). UHSI and District Hospital Partners shared the same counsel at the time of service, so District Hospital Partners had constructive notice of this action when UHSI was served. *See* Pl.'s DHP Opp'n at 16. Second, when defendants share a qualifying "identity in interest," including when the newly named defendant is a wholly-owned subsidiary of the original defendant, courts impute the notice received by the original defendant onto the party sought to be added. *See Bayatfshar v. Aeronautical Radio, Inc.*, 934 F. Supp. 2d 138, 144 (D.D.C. 2013) (holding that a wholly owned subsidiary received constructive notice of an action when its parent corporation was served); *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 102–03 (1st Cir. 1979) ( "The identity in interest principle is often applied where the original and added parties are a parent corporation and a wholly owned subsidiary"). Because District Hospital Partners is a wholly owned subsidiary of USHI, that principle applies here.

The third requirement is also met because District Hospital Partners "knew or should have known that the action would have been brought against it, but for a mistake concerning the

proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). "[S]imply reading the plaintiff's allegations in [his] original complaint" would have informed the parent corporation, USHI, that Valentine had intended to sue District Hospital Partners. *See Lee v. Toshiba Mach. Co. of Am.*, 804 F. Supp. 1029, 1033–34 (E.D. Tenn. 1992) (holding that when a plaintiff filed suit against a wholly owned subsidiary, the parent corporations were deemed to have received adequate notice within the limitations period under Rule 15(c)). UHSI is the parent company of District Hospital Partners, so when UHSI received the complaint detailing actions that took place within the hospital owned by District Hospital Partners, District Hospital Partners should have known the action would have been brought against it but for the plaintiff's mistake. *See Staren v. Am. Nat. Bank & Tr. Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976); *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384–85 (9th Cir. 1982). Because all three Rule 15(c) requirements are met, Valentine's DCHRA claim against District Hospital Partners relates back to the date of his original complaint and is not time-barred.

### b. Whether Valentine Failed to State a Claim

District Hospital Partners also argues that Valentine failed to state a claim under the DCHRA because he has not alleged a qualifying disability. DHP Mot. Dismiss at 9–10 (arguing that Valentine "fails to plausibly allege a disability that substantially limits one o[r] more major life activities"); *see also id.* at 16. The DCHRA prohibits "deny[ing], directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations" for discriminatory reasons such as actual or perceived disability. D.C. Code § 2-1402.31. The DCHRA defines a "disability" as a "physical or mental impairment that substantially limits one or more of the major life activities

13

of an individual having a record of such an impairment or being regarded as having such an impairment." *Id.* § 2-1401.02(5A).

Even considering all of Valentine's filings, as the Court must, *see Brown v. Whole Foods Market Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015), he has not alleged any facts tending to show that his disability limits or impairs a major life activity. Both complaints state in a conclusory fashion that Valentine's disability is one that "substantially limits/impairs his major life activities." Am. Compl. at 6 n.1; Compl. at 3 n.1. Valentine's other filings refer to additional facts about his disability but do not actually articulate those facts. *See*, *e.g.*, Pl.'s DHP Opp'n at 13. Valentine must allege specific facts that would plausibly allow a factfinder to conclude that his condition qualifies as a disability within the meaning of the DCHRA. *See Twombly*, 550 U.S. at 570 (holding that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face"). He has not done so. The Court will therefore grant District Hospital Partners' motion to dismiss Valentine's DCHRA claim against it pursuant to Rule 12(b)(6).

In a similar case alleging a DCHRA violation based on his inability to wear a mask, Valentine provided "ample detail . . . [that] clarifie[d] the nature of his alleged disability and why that disability prevents him from wearing face masks." *Valentine*, 2023 WL 346099 at *6. He also "specifically show[ed] how his alleged disability poses substantial limitations on his 'major life activities[]' . . . [a]nd he tie[d] the challenges he faces wearing face masks directly to those limitations." *Id.* (quoting D.C. Code § 2.1401.02(5A)). To allow Valentine the opportunity to provide those factual details in this action, the Court will grant him leave to file a second amended complaint against District Hospital Partners. *See Firestone v. Firestone*, 76 F.3d 1205,

14

1208 (D.C. Cir. 1996) (Leave to amend a complaint is within the court's discretion and should be given "freely" "when justice so requires.") (quoting Fed. R. Civ. P. 15(a)).

### B. Claims Against George Washington Defendants

Valentine raises claims against GWU and MFA under the same two statutory provisions, the ADA and DCHRA. GWU and MFA move to dismiss the claims against them because none of the factual allegations in the complaint are tied to GWU or MFA. At the time of Valentine's visit in 2023, GWU had "no ownership interest whatsoever in the hospital[,] nor did it have any role in managing the hospital," and

> MFA did not employ any: gift shop employees who worked at the hospital; hospital concierge employees who worked at the hospital; Emergency room nurses who worked at the hospital; Emergency department managers who worked at the hospital; hospital Patient Experience personnel who worked at the hospital; or hospital security guards or other hospital security personnel.

GWU Defs.' Mot. Dismiss at 8. GWU and MFA submitted signed declarations from employees stating that neither entity had ownership in GWU Hospital. *See* Ex. A to GWU Defs.' Mot., ECF No. 26-2; Ex. B to GWU Defs.' Mot., ECF No. 26-3. Valentine claimed to be unaware that "GWU had sold its stake in the hospital the year before the incident." Pl.'s GWU Defs.' Resp. ¶ 8. After discovering this information, Valentine stated that he had no reason "to dispute the veracity of GWU and [MFA's] assertions and affidavits regarding their relationships with the hospital." *Id.* ¶ 11. Valentine has conceded that GWU and MFA should be dismissed as parties to his action. *Id.* ¶ 19. The Court will therefore dismiss the ADA and DCHRA claims against GWU and MFA.

## V.  CONCLUSION

For the foregoing reasons, both Motions to Dismiss (ECF Nos. 26, 29) are **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated: July 21, 2025                                                            RUDOLPH CONTRERAS
                                                                                              United States District Judge